**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| **SHARON E. SMITH,** | * | |
| *Plaintiff,* | * | |
| **v.** | * | **Civil Action: 1:15-cv-1061** |
| **EQUIFAX, INC.** | * | |
| **32 South Street** | | |
| **Baltimore, MD 21202** | * | |
| **Serve on:** | * | |
| **The Prentice-Hall** | * | |
| **Corporation System, M** | | |
| **7 St. Paul St., Ste. 1660** | * | |
| **Baltimore, MD 21202** | | |
| | * | |
| **and** | | |
| | * | |
| **EXPERIAN INFORMATION** | | |
| **SOLUTIONS, INC.** | * | |
| **505 City Pkwy West** | | |
| **Orange, CA 92668** | * | |
| **Serve on:** | * | |
| **The Corporation Trust** | * | |
| **Incorporated** | | |
| **351 West Camden St.** | * | |
| **Baltimore, MD 21201** | | |
| | * | |
| **and** | | |
| | * | |
| **TRANS UNION LLC** | | |
| **1013 Centre Road** | * | |
| **Wilmington, DE 19805** | | |
| | * | |
| **Serve on:** | | |
| | * | |

**CSC-Lawyers Incorporating**          *
**Service Company**
**7 St. Paul St., Ste. 1660**          *
**Baltimore, MD 21202**
                                       *
**and**
                                       *
**NAVY FEDERAL CREDIT UNION,**
**820 Follin Lane**                    *
**Vienna, VA 22180,**
                                       *
    **Serve on:**
                                       *
    **Cutler Dawson**
    **President/CEO**       *
    **820 Follin Lane**
    **Vienna, VA 22180,**   *

    ***Defendants.***      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, Sharon E. Smith, (hereafter the "Plaintiff") by counsel, and for her complaint against the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial harm, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.      Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system, to wit:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.    The preservation of one's good name is also at the heart of the FCRA's purposes:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.    To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9.    This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff Sharon E. Smith against Equifax, Inc.; Experian Information Solutions, Inc.; Trans Union LLC; and NFCU for violation of common law and for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein and asserts an additional claim against NFCU under common law.

## **JURISDICTION**

10.    The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367.

11.     The Plaintiff is a natural person and resident of the State of Maryland. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12.     Upon information and belief, Equifax, Inc. (hereafter "Equifax") is a corporation incorporated under the laws of the State of Georgia and is authorized to do business in the State of Maryland.

13.     Upon information and belief, Experian Information Solutions, Inc. (hereafter "Experian") is a corporation incorporated under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

14.     Upon information and belief, Trans Union, LLC (hereafter "Trans Union") is organized under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

15.     Upon information and belief, Equifax, Experian and Trans Union are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Equifax, Experian and Trans Union are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

16.     Upon information and belief, Equifax, Experian and Trans Union disburse such consumer reports to third parties under contract for monetary compensation.

17.     Upon information and belief, Navy Federal Credit Union (hereafter "NFCU") is a Virginia-based federal credit union doing business and causing injury in Maryland.

18.     Within two years prior to the filing of this lawsuit Plaintiff requested and received a copy of the credit file of the Plaintiff compiled and maintained by Equifax, Experian and Trans Union.

19.     Within each credit report, Equifax, Experian and Trans Union reported inaccurate information furnished by NFCU claiming that Plaintiff co-signed for a loan associated with Account # 4300148783**** from NFCU (the "NFCU representation").

20.     The NFCU representation was false because Plaintiff never co-signed the loan and NFCU had actual knowledge that she had not entered into any written agreement related to Account # 4300148783****.

21.     NFCU's records reflected that Plaintiff never co-signed the loan and never entered into any written agreement related to Account # 4300148783****.

22.     Within two years prior to the filing of this lawsuit Plaintiff contacted NFCU disputing the NFCU representation.

23.     Within two years prior to the filing of this lawsuit Plaintiff contacted Equifax, Experian and Trans Union disputing the NFCU representation.

24.     Equifax, Experian and Trans Union responded to these disputes but did not delete the NFCU representation.

25.     Upon the Plaintiff's request for verification and deletion, and in accordance with its standard procedures, Equifax, Experian, and Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the NFCU representation.

26.     In the alternative to the allegation that Equifax, Experian, and Trans Union failed to contact NFCU, it is alleged that Equifax, Experian, and Trans Union did forward some notice of the dispute to NFCU and NFCU failed to conduct a lawful investigation.

27.     The Plaintiff has maintained excellent credit and the only negative item on her credit report is the NFCU representation.

<u>COUNT I</u>
<u>VIOLATION OF 15 U.S.C. § 1681e(b) BY EQUIFAX, EXPERIAN and TRANS UNION</u>

28.     The Plaintiff realleges and incorporates paragraphs 1 through 27 above as if fully set out herein.

29.     A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

30.     Equifax, Experian, and Trans Union are each a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

31.     Section 1681n of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681n(a)(l)-(3).

32.    Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. *See* 15 U.S.C. § 1681o. Any person who negligently fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. *Id*. at § 1681o(a)(l)-(2).

33.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681e(b).

34.    When Equifax, Experian, and Trans Union receive a dispute from a consumer, their "investigation" procedure involves little more than condensing the consumer's dispute to a two-digit code that gets transmitted electronically to the furnisher of the disputed information for comparison with the furnisher's own information.

35.    Upon information and belief, Equifax, Experian, and Trans Union do no independent or further "investigation" of the substance of the consumer's dispute.

36.    This method of investigation is known as "parroting" of information, and has been rejected routinely by courts throughout the country.

37.    Making matters worse, Equifax, Experian, and Trans Union have a policy and/or procedure not to investigate a dispute lodged by a consumer if the subject of the dispute has been "investigated" by them previously. In other words, upon receipt of a consumer's dispute, Equifax, Experian, and Trans Union's first step is to check whether the subject of the dispute has previously been "investigated," *i.e.*, whether a two-digit code has previously been sent to

the furnisher of the information to check whether the data matches. If it has, Equifax, Experian, and Trans Union refuse to do any sort of investigation into the consumer's dispute whatsoever.

38.     Upon information and belief, a procedure aimed at the expeditious elimination of work for Equifax, Experian, and Trans Union instead of the accuracy of the underlying information is patently unreasonable.

39.     Moreover, the FCRA envisions the investigation process to involve both the CRA **and** the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. §1681i and § 1681s-2b, the consumer has greater protection that inaccurate information will be corrected as quickly as possible.

40.     Because of the repeat dispute procedure, the consumer loses that protection. Equifax, Experian, and Trans Union unilaterally determine that the furnisher of the disputed information will not even be contacted to conduct its own investigation.

41.     While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher **must** receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681s-2b.

42.     As described above, Equifax, Experian, and Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information they circulated about Plaintiff.

43.     As a direct and proximate result of the failures of Equifax, Experian, and Trans

Union, Plaintiff has suffered economic and non-economic loss in specific amounts to be proved at trial.

44.    As a direct and proximate result of the failures Equifax, Experian, and Trans Union, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as themselves.

45.    As a direct and proximate result of the willful and/or negligent refusal of Equifax, Experian, and Trans Union to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

46.    The continued refusal of Equifax, Experian, and Trans Union to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff. The injuries suffered by the Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling the Plaintiffs to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681$n$(a)(2).

47.    Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

**COUNT II**
**VIOLATION OF 15 U.S.C. § 1681i EQUIFAX, EXPERIAN and TRANS UNION**

48.    Plaintiff realleges and incorporates paragraphs 1 through 47 above as if fully set out herein.

49.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

50.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

51.    The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." See 15 U.S.C. § 1681i(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." *See* 15 U.S.C. § 1681i(a)(3)(B).

52.    Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant

information to NFCU; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

53.     Equifax, Experian, and Trans Union willfully and/or negligently failed to conduct *any* investigation, let alone a reasonable investigation, of Plaintiff's dispute in violation of 15 U.S.C. § 1681i(a)(1).

54.     Upon information and belief, at no point in its review of Plaintiff's dispute did Equifax, Experian, and Trans Union make a determination that the dispute was frivolous or irrelevant.

55.     Equifax, Experian, and Trans Union certainly did not advise the Plaintiff that Plaintiff's dispute had been determined to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681i(a)(3)(B).

56.     As a direct and proximate result of the refusal to conduct a reasonable investigation by Equifax, Experian, and Trans Union, Plaintiff has suffered economic and noneconomic loss.

57.     As a direct and proximate result of the refusal of Equifax, Experian, and Trans Union, Plaintiff has suffered considerable mental, emotional and physical stress and distress.

58.     As a direct and proximate result of the disregard by Equifax, Experian, and Trans Union for Plaintiff's disputes and the importance of the Plaintiff's good name and credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as themselves.

59.     As a direct and proximate result of the willful and/or negligent refusal by

Equifax, Experian, and Trans Union to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

60.     The continued refusal by Equifax, Experian, and Trans Union to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by the Plaintiff is attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681n(a)(2).

**COUNT III**
**DEFAMATION BY NFCU**

61.     Plaintiff realleges and incorporates paragraphs 1 through 60 above as if fully set out herein.

62.     NFCU published the NFCU representation to Equifax, Experian, and Trans Union and through Equifax, Experian, and Trans Union to all of Plaintiff's potential lenders on multiple occasions. (the "Defamation").

63.     The Defamation was willful and with malice. NFCU had actual knowledge that the Plaintiff was not legally responsible to pay any amount for the account reported in the NFCU representation. Alternatively, NFCU did not have any reasonable basis to believe that the Plaintiff was responsible for the account reported in the NFCU representation. NFCU also

had substantial evidence by which to have verified that the Plaintiff had not agreed to be personally responsible for the account reported in the NFCU representation. NFCU willfully determined to follow procedures which did not review, confirm or verify whether the Plaintiff had agreed to be personally responsible for the account reported in the NFCU representation.

64.     As a result of this conduct, action and inaction of NFCU, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial.

65.     The Defamation, conduct and actions of NFCU were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against NFCU in an amount to be determined by the Court.

**COUNT IV**
**VIOLATION OF 15 U.S.C. § 1681s-2(b) BY NFCU**

66.     Plaintiff realleges and incorporates paragraphs 1 through 65 above as if fully set out herein.

67.     NFCU violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the NFCU representation within Plaintiff's credit file with Equifax, Experian, and Trans Union by omitting information that it could not prove that the Plaintiff was personally responsible for the account thereby rendering the reported information misleading; by failing to fully and properly investigate the Plaintiff's dispute of the NFCU representation; by failing to review all relevant information regarding same; by failing to

accurately respond to Equifax, Experian, and Trans Union; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the NFCU representation to the consumer reporting agencies.

68.     As a result of this conduct, action and inaction of NFCU, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial.

69.     NFCU's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

70.     The Plaintiff is entitled to recover costs and attorney's fees from NFCU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff, Sharon E. Smith, respectfully prays for a judgment against Defendants as follows:

a.     Actual damages sustained in an amount in excess of $75,000.00 and statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

b.     Such amount of punitive damages as the Court may allow for violations of the FCRA;

c.     The costs of the action together with reasonably attorney's fees as determined by the Court;

d.     Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Sharon E. Smith hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, punitive damages, attorney's fees and litigation costs.

Dated: April 13, 2015                    Respectfully Submitted,


/s/ E. David Hoskins_____
E. David Hoskins, Esq. , No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
davidhoskins@hoskinslaw.com


/s/ Max F. Brauer_____
Max F. Brauer, Esq., No. 11306
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
maxbrauer@hoskinslaw.com